# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *ex rel.,* )<br>W.A. DREW EDMONDSON, )<br>ATTORNEY GENERAL OF OKLAHOMA )<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　Plaintiff, )<br>vs. 　　　　　　　　　　　　　　　　)　　NO. CIV-09-0944-HE<br>　　　　　　　　　　　　　　　　　　)<br>BP AMERICA INC., et al., 　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　Defendants. 　　　) | |

## ORDER

The State of Oklahoma, through its Attorney General,[1] filed this action against defendants BP America Inc., BP Corporation North America Inc. and BP Products North America, Inc. in state court seeking relief under the state's Consumer Protection Act and common law for the defendants' alleged manipulation of the gasoline and crude oil markets. The defendants removed the action, claiming the case qualifies as a mass action under the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.). The plaintiff has filed a motion to remand for lack of subject matter jurisdiction.

CAFA defines a "mass action" as "any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact ...." 28 U.S.C. § 1332(d)(11)(B)(I). To remove a mass action to federal court under CAFA, "a defendant must show: (1) an amount

---

[1] *The Attorney General brought the suit through various private attorneys from Oklahoma, Washington, D.C., Florida, Missouri, and Mississippi.*

in controversy [in excess] of an aggregate of $5,000,000 in claims: (2) minimal diversity; (3) numerosity involving monetary claims of 100 or more plaintiffs; and (4) commonality showing that the plaintiffs' claims involve common questions of law or fact." Thomas v. Bank of America Corp., 570 F.3d 1280, 1282 (11th Cir. 2009); 28 U.S.C. § 1332(d). The plaintiff contends the numerosity and diversity elements are missing and that the case falls within the general public litigation exception to "mass action" jurisdiction.[2]

Numerosity

The plaintiff argues this is not a mass action because it was not filed on behalf of specific Oklahoma consumers or to recover damages owed any particular individual. It asserts the case is brought in a *parens patriae* capacity "to protect the integrity of Oklahoma markets and to enforce the civil penalties and forfeiture provisions of the Oklahoma Consumer Protection Act." Plaintiff's motion, p. 2.

To have standing under the *parens patriae* doctrine "the State must assert an injury to what has been characterized as a 'quasi-sovereign' interest ...." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 601 (1982).[3] The Supreme Court has acknowledged that a "quasi-sovereign" interest "is a judicial construct that does not lend itself to a simple or

---

[2]*While the defendants must establish under CAFA that the amount in controversy and minimal diversity requirements are met,* Amoche v. Guarantee Trust Life Ins. Co., *556 F.3d 41, 48 (10th Cir. 2009), the plaintiff bears the burden of proving that one of the exceptions to federal jurisdiction applies.* Evans v. Walter Indus., Inc.,*449 F.3d 1159, 1164-65 (11th Cir. 2006). Even if the plaintiff is correct that that burden, too, rests on the defendants, the court's conclusions would not be affected.*

[3]*The plaintiff does not claim a sovereign interest is at stake.*

exact definition." *Id.* Quasi-sovereign interests "consist of a set of interests that the State has in the well-being of its populace." *Id.* at 602.[4] To have standing to sue *parens patriae*, the State must be more than a nominal party. *Id.* It must have a real interest of its own which is "sufficiently concrete to create an actual controversy between the State and the defendant." *Id.* at 602.

While they acknowledge that the Supreme Court has found *parens patriae* standing in various cases, the defendants assert those cases involved "conduct that denied a State's equal and fair participation in the federal system and interstate commerce, thereby threatening widespread and systemic harm to its citizenry." Defendants' response, p. 2.[5] The defendants argue that *parens patriae* standing is routinely denied in situations such as this in which the claimed economic injury consists of "a collection of private claims for alleged overcharges." *Id.* They contend the Attorney General is not seeking to vindicate public rights, but instead is asserting claims "on behalf of a limited subset of Oklahoma consumers." *Id.* at p. 6.

In support of the removal the defendants rely primarily on Caldwell v. Allstate Ins. Co., 536 F.3d 418 (5th Cir. 2008), an action brought in state court by the Louisiana Attorney General along with several private law firms against multiple companies in the insurance

---

[4]*In* Snapp, *the Supreme Court identified two general categories of quasi-sovereign interests – the state's interest in the general well-being of its residents, both physical and economic, and its interest "in assuring that the benefits of the federal system are not denied to its general population."* Snapp, *458 U.S. at 608. Only the former interest is possibly implicated here.*

[5]*The court agrees with the plaintiff that defendants define quasi-sovereign interest too narrowly. See supra note 4.*

3

industry for alleged violations of Louisiana's antitrust laws. The Louisiana Attorney General claimed that the defendants combined to suppress competition by fixing the value of insurance policy holders' claims and raising insurance premiums to cover their losses. The defendants removed the lawsuit under CAFA's mass action provision and the district court denied the state Attorney General's motion to remand, concluding the citizen policyholders were the real parties in interest. The Attorney General appealed to the Fifth Circuit.

The appellate court initially considered the Supreme Court's decisions in Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251 (1972) and Snapp, which it found "useful in illustrating both the limitations and reach of *parens patriae* actions." Caldwell, 536 F.3d at 426. The court observed that "based on these two cases it is clear that while *parens patriae* actions are not restricted to their common law roots, there are some limitations, particularly when a state is seeking to recover damages for alleged injuries to its economy." *Id* at 427. Although it recognized that the Louisiana Attorney General had the "statutory and constitutional authority to bring parens patriae antitrust actions," the Fifth Circuit focused on the "narrow issue" before it – "who are the real parties in interest: the individual policyholders or the State." *Id.* at 428-29. "Even assuming *arguendo* that the Attorney General ha[d] standing to bring such a representative action," *id.* at 429, "if the Attorney General [was] only a nominal party and the policyholders [were] the real parties in interest, then the nature of the claims asserted [had to] be examined to determine if they [were] removable under CAFA." *Id.* at 428.

The Fifth Circuit noted that one court had considered, when determining if a state was

4

a real party in interest, whether the state undertook to "sue for the particular benefit of a limited number of citizens," rather than showing "a direct interest of its own." *Id.* Another had found that "[t]he state is the real party in interest when an action concerns a type of injury that the state either has addressed or would likely attempt to address through its laws to further the well-being of its populace." *Id.* (internal quotations and citations omitted).

The circuit court then analyzed the statutes that provided the remedies being sought – "forfeiture of illegal profits, treble damages, and injunctive relief." *Id.* at 423. Because the individual policyholders were the parties intended to enforce the statutory provision authorizing treble damages, the Fifth Circuit determined they were the real parties in interest.

> The text of § 137 of the Monopolies Act, which authorizes the recovery of treble damages, plainly states that 'any person who is injured in his business or property' under the Monopolies Act 'shall recover[ ] [treble] damages.' The plain language of that provision makes clear that individuals have the right to enforce this provision. Accordingly, we agree with the district court and hold that under § 137 the policyholders, and not the State, are the real parties in interest.

*Id.* at 429.

The plaintiff asserts Caldwell is distinguishable because in that case the Louisiana Attorney General was suing private insurers for alleged improper actions with respect to their contracts with specific individual citizens. Here, the Attorney General claims the state is suing, as authorized by statute, to enforce the OCPA and police the state's economic markets.

As the Fifth Circuit noted, the question is not whether the Attorney General has the authority to sue, but whether the state is the real party in interest with respect to the claims

5

asserted. Caldwell, 536 F.3d at. 429.[6] *See* New York *ex rel*. Cuomo v. Charles Schwab & Co., Inc., 2010 WL 286629, at *4 (S.D.N.Y. 2010) ("'[W]hen the state merely asserts the personal claims of its citizens, it is not the real party in interest and cannot claim parens patriae standing.") (quoting In re Baldwin-United Corp., 770 F.2d 328, 341 (2d Cir. 1985)). Both the petition and the statutory basis for the litigation – the OCPA– are instructive in answering that question.

The petition begins with the statement that the Attorney General has brought the action for "penalties, injunctive relief, revocation of authorization to do business, and/or a constructive trust or sequestration of assets or other relief pursuant to the common law and the consumer protection laws of the State of Oklahoma." Petition, p. 1. Although the Attorney General specifically denies in the petition that he is seeking "damages or other relief that may be owed any particular individual," petition, ¶14, at the conclusion of the petition he requests that the defendants "be ordered to pay damages and provide restitution as authorized by law." *Id.* p. 14.

Under the OCPA, if successful, the Attorney General can recover civil penalties, plus declaratory and injunctive relief to curb specified unlawful practices. The Attorney General may seek actual damages "on behalf of <u>an</u> aggrieved consumer, in an individual action only

---

[6]*Although to some extent they overlap, the parens patriae doctrine and the concept of the real party in interest are distinguishable.* Hood v. F. Hoffman-La Roche, Ltd., *639 F.Supp.2d 25, 33 n.9 (D.C.D.C. 2009) ("As the Fifth Circuit indicated in* Allstate Ins. Co., *whether a state's attorney general has standing to pursue an action in a representative capacity as parens patriae is an independent inquiry from the question of whether that same attorney general, or anyone else for that matter, is the real party in interest for a particular claim.").*

6

...." 15 Okla. Stat. § 756.1(A)(3) (emphasis added). He cannot, though, recover damages under the OCPA on behalf of a group of "aggrieved consumers." Aggrieved consumers can sue under the OCPA, as the statute creates a "private right of action for damages." 15 Okla. Stat. § 761.1(A). They can obtain their actual damages, including attorney's fees and costs, and, if they sue individually, may obtain a civil penalty for each unconscionable violation. *Id.* §761.1(B). If the aggrieved consumers elect to forego the civil penalties, there is no statutory prohibition on their suing as a group. Here, as in Caldwell, at least with respect to the plaintiff's claims for damages under the OCPA, the individual consumers and not the State are the real parties in interest.

While damages are available under the plaintiff's common law claim for unjust enrichment, the petition is vague as to whom restitution would be made -- "BP has failed to make restitution for the profit it received, at the expense of the state of Oklahoma citizens, from the unlawful behavior outlined above." Petition, ¶ 60. As explained in the Restatement (Third) of Restitution and Unjust Enrichment, "[a] person who is unjustly enriched at the expense of another is liable in restitution to the other." Restatement (Third) of Restitution and Unjust Enrichment §1 (Discussion Draft, 2000) (emphasis added). Any damages should be recovered by, or restitution should be made to, the individual consumers.[7] The Attorney General argues to the contrary stating: "[c]ourts have routinely found that the State is the *sole* party in interest with respect to restitution claims brought under consumer protection

---

[7]*The State has not claimed damages in its proprietary capacity for overcharges it paid for petroleum products.*

statutes." Plaintiff's reply, p. 6. However, the cases cited are distinguishable, as are many of the pertinent consumer protections statutes addressed in those cases. *See* Illinois v. Livedeal, Inc., 2009 WL 383434 at *3 (C.D.Ill. 2009) ("Illinois courts have held that when an Attorney General brings suit under the CFDBPA, the State is not only the primary party in interest, but the sole party in interest.");[8] In re Edmond, 934 F.2d 1304, 1310-11 (4th Cir. 1991) ("Maryland law has construed the restitution provision of the Act to embody the state's interest in disgorging the benefit from the violator .... The [Consumer Protection] Division's ability to require disgorgement over and above that which will be returned to individuals was emphasized" in a Maryland appellate decision.). Regardless, the OCPA specifies the relief the Attorney General may seek and damages, other than for a single aggrieved consumer, are not included. *See* 15 Okla. Stat. §§ 756.1; 761.1.

Because the State seeks damages and restitution, in addition to an injunction and statutory penalties, the question becomes what is the primary aim of this litigation – is the Attorney General suing to protect the economic well being of its residents in general or "merely litigating as a volunteer the personal claims of its citizens." Pennsylvania v. New Jersey, 426 U.S. 660, 665 (1976); *see* Commonwealth ex rel. Stumbo v. Marathon Petroleum Co., LLC, 2007 WL 2900461, at *4 (E.D.Ky. 2007) ("In determining whether the state is the real party in interest where the state attorney general is the plaintiff, most courts follow this

---

[8]*The court in* Livedeal *also concluded that "even apart from Illinois case law, it is clear that the relief sought primarily benefits the State" as the State was asking for wide-ranging injunctive relief and civil penalties that could dwarf any restitutionary recovery, as the "Complaint request[ed] up to $50,000 per violation ...."* Livedeal, Inc., *2009 WL 383434 at *3.*

8

approach of looking at the complaint as a whole to determine whether the state is the primary beneficiary of the action."). The plaintiff contends it clearly is the former because the suit is brought under a consumer protection statute. However, that alone "does not transform the action into a 'sovereign enforcement' proceeding." Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 107 (2nd Cir. 1997); *see* New York v. General Motors Corp., 547 F.Supp. 703 (S.D.N.Y 1982). The plaintiff also ignores the fact that the OCPA is not the only basis for his lawsuit – he also asserts a claim for unjust enrichment "under the common law as *parens patriae*." Petition, ¶ 64.

One problem with Oklahoma's position is that, although the petition alleges the case is about the defendants' asserted manipulation of the commodities markets for gasoline and other refined petroleum products from 2002 until the present, the specific allegations pertain to conduct that occurred during a one week period in 2002, and a two week period in 2003.[9] A considerable part of the pleading is devoted to allegations about how the defendant used its ownership of crude oil pipeline connections and storage facilities in Cushing, Oklahoma to manipulate the crude oil market. However, not only were the defendants required to divest themselves of those assets in 2000, the only link between the alleged conduct and Oklahoma consumers is found in the allegation that "[b]ecause gasoline is derived from crude oil, BP's manipulation of the crude oil market resulted in inflated prices for gasoline and refined

---

[9]*The claims are based on the increased prices Oklahomans paid for unleaded gasoline between October 31, 2002, and November 6, 2002, Petition, Appendix 1, and August 10, 2003 and August 22, 2003, Petition, Appendix 3.*

9

petroleum products in, among other places, in the state of Oklahoma, thus causing injury to consumer and businesses in Oklahoma." Petition, ¶ 40.

Plaintiff's argument that it is suing to protect the integrity of the State's marketplace would be more compelling if there were allegations supporting its claim that injunctive relief is appropriate. The State has not, though, pleaded ongoing, or even recent, violations of the OCPA by the defendants or that, absent the injunction, the asserted violations of the OCPA will recur.[10] That alone distinguishes this action from many of the cases cited by the plaintiff, *see e.g.* New York, 547 F.Supp. 703, 705 n.4, and cases in which a state has been granted standing under the *parens patriae* doctrine. *See* Snapp, 458 U.S. at 592 (Puerto Rico had *parens patriae* standing to assert discrimination by Virginia apple growers against its citizens and to assert violations of federal statutory scheme relating to temporary foreign workers); Georgia v. Pennsylvania R.Co., 324 U.S. 439 (1945) (Georgia had *parens patriae* standing to sue railroads for conspiring to fix freight rates in a manner that discriminated against Georgia shippers in violation of federal antitrust laws); Pennsylvania v. West Virginia, 262 U.S. 553 (1923) (Pennsylvania had *parens patriae* standing to challenge West Virginia statute that limited the export of natural gas produced in West Virginia). The plaintiff's argument also would carry more weight if the State were only seeking the remedy of injunctive relief and/or statutory penalties, s*ee generally* Caldwell, 536 F.3d at 430 (if the

---

[10]As the documents attached to the defendants' response reflect, the defendants have been extensively investigated and their commodity trading activity has been closely monitored and controlled under a federal injunction.

10

state of Louisiana were only seeking the remedy of injunctive relief, "which is clearly on behalf of the State, its argument that it is the only real party in interest would be much more compelling."), or if, as in cases in which the state has been afforded standing as *parens patriae,* there was a more immediate connection between the defendants and the consumer than exists here.*[11] See e.g.,* Charles Schwab & Co., 2010 WL 286629.

Viewing the complaint has a whole and considering the parties' submissions,[12] the court concludes that, while the state may have a stake in the outcome of the case, it is not sufficiently substantial to merit *parens patriae* standing as to the claims asserted.[13] *See* Hood v. F. Hoffman-La Roche, Ltd., 639 F.Supp.2d 25, 29-33 (D.C.D.C. 2009); *see generally* Philip Morris, Inc., 123 F.3d at 106-07. As pleaded, this "is [not] a matter of grave public concern in which the state, as the representative of the public, has an interest apart from that of the individuals affected." Pennsylvania v. West Virginia, 262 U.S. at 592. This case does not approximate a law enforcement action designed to protect the public, but rather is one designed in principal part to recover damages for individual consumers, who are the real parties in interest insofar as the claim for restitution/damages is concerned. The defendants

---

[11]*The plaintiff has alleged the defendants manipulated the gasoline and crude oil commodities markets, not that they were in the state selling gasoline.*

[12]*In considering the motion to remand, the court has reviewed the evidentiary submissions of the parties.* Radill v. Sanborn Western Camps, Inc., *384 F.3d 1220, 1224 (10th Cir. 2004) ("Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.").*

[13]*The plaintiff here essentially argues that it has standing to pursue the action and recover damages in a representative capacity as parens patriae.*

11

have, therefore, met their burden of demonstrating that CAFA's numerosity requirement for a mass action is satisfied.

General Public Litigation Exception to CAFA

CAFA exempts from the term "mass action" any civil action in which "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III) (emphasis added). As the court has found that the Attorney General is asserting damages claims on behalf of specific consumers, rather than the public in general, and he has asserted a common law claim for unjust enrichment, "all of the claims" are not asserted either on behalf of the general public or pursuant to a state statute. Therefore, contrary to the plaintiff's assertion, the exemption does not apply.

Diversity

While the State of Oklahoma is not a citizen for purposes of diversity jurisdiction, as the court has concluded that Oklahoma citizen consumers are the real parties in interest with respect to the claim for unjust enrichment/damages, the minimal diversity requirement of CAFA is satisfied. The plaintiff's reliance on cases such as Hood, 639 F.Supp.2d at 33, is misplaced, as in them the removals were under 28 U.S.C. § 1332, not CAFA, so complete diversity between the parties was needed.

Amount in controversy requirement

In his motion the plaintiff does not contest the defendants' assertion in their notice of

removal that the amount in controversy per "aggrieved consumer" exceeds $75,000. As the court has an independent obligation to determine whether subject matter jurisdiction exists, it directs the parties to file briefs not to exceed ten pages addressing the $75,000 amount in controversy requirement within ten days. See 28 U.S.C. § 1332(d)(11)(B)(i).

Accordingly, a ruling on the plaintiff's motion to remand is deferred pending receipt of the supplemental briefs.

**IT IS SO ORDERED**.

Dated this 24th day of March, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE